**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

RORY M. COLEMAN,

*Plaintiff,*

v.

BOSTON RETIREMENT SYSTEM,

*Defendant.*

Civil Action No. ____________________

**JURY TRIAL DEMANDED**

FILED
IN CLERKS OFFICE
2026 FEB 17 PM 3:08
U.S. DISTRICT COURT
DISTRICT OF MASS.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER 42 U.S.C. SECTION 1983**

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over Plaintiff's claims under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. s. 1983 pursuant to 28 U.S.C. s. 1331 (federal question jurisdiction) and 28 U.S.C. s. 1343(a)(3) and (4) (civil rights jurisdiction).

2. Venue is proper in this District under 28 U.S.C. s. 1391(b) because the events giving rise to Plaintiff's claims occurred within this District, and Defendant maintains its principal place of business in Boston, Massachusetts.

3. Exhaustion of state administrative remedies is not required for claims brought under 42 U.S.C. s. 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982). Plaintiff has nonetheless pursued available administrative remedies and was explicitly directed by the

Division of Administrative Law Appeals ("DALA") to bring his constitutional claims in court.

## PARTIES

4. Plaintiff Rory M. Coleman is a police officer employed by the City of Boston since November 27, 2006. He holds active Peace Officer Standards and Training ("POST") certifications in both Massachusetts (through July 1, 2028) and California. He holds a Bachelor's degree in Criminal Justice from Northeastern University and is pursuing a Master of Legal Studies in Cybersecurity Law at Boston College Law School. Plaintiff resides in Newton Centre, Massachusetts. Plaintiff's mailing address is PO Box 590236, Newton Centre, MA 02459. Plaintiff proceeds pro se.

5. Defendant Boston Retirement System ("BRS") is a governmental entity created under Massachusetts General Laws chapter 32, administering retirement benefits for employees of the City of Boston. BRS is a "person" subject to suit under 42 U.S.C. s. 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). At all relevant times, BRS acted under color of the laws, customs, and usages of the Commonwealth of Massachusetts and the City of Boston.

## PROCEDURAL HISTORY

6. On July 11, 2025, BRS notified Plaintiff of the opportunity to purchase creditable service under the Honoring, Empowering, and Recognizing Our Servicemembers and Veterans Act ("HERO Act"), 2024 Mass. Acts ch. 178, amending G.L. c. 32, s. 4(1)(h). On August 7, 2025, Plaintiff submitted his application. On the application, Plaintiff identified himself as

LGBTQ+ and explained that he was unable to serve in the military despite his willingness and desire to do so, due to laws that prohibited his service based on sexual orientation.

7. On August 8, 2025, BRS Executive Officer Timothy J. Smyth requested a DD-214 discharge form. Plaintiff responded: "I was denied military service under the Uniform Code of Military Justice due to policies that criminalized my identity. I am now seeking equitable access to the buyback opportunity that my similarly situated heterosexual peers were afforded."

8. On September 5, 2025, Executive Officer Smyth issued a formal denial letter on behalf of BRS. The denial letter stated that Plaintiff was "not eligible to make this service purchase" because he was never issued a DD-214. The letter further stated: "The Retirement Board recognizes the unfairness of your situation. Unfortunately, we are bound by Massachusetts General Law and cannot grant you the relief you seek. We would urge you to consider appealing this decision or perhaps seeking legislative redress."

9. Plaintiff timely appealed to the Division of Administrative Law Appeals ("DALA"). On September 19, 2025, Administrative Magistrate Kenneth J. Forton asked Plaintiff clarifying questions about his military service. On October 4, 2025, Plaintiff filed a detailed response explaining the discriminatory environment that coerced his withdrawal from the Delayed Entry Program ("DEP").

10. On October 10, 2025 (re-issued November 7, 2025 due to mailing error), DALA issued an Order of Dismissal in Docket No. CR-25-0530. Magistrate Forton acknowledged that "Mr. Coleman advances thoughtful and challenging arguments" but concluded that constitutional claims "cannot be entertained by an administrative tribunal" and "belong in the Superior

Court." DALA explicitly directed Plaintiff to court for resolution of his constitutional claims.

11. On November 30, 2025, Plaintiff filed an objection with the Contributory Retirement Appeal Board ("CRAB") to preserve his statutory claims. On January 3, 2026, Plaintiff filed a Memorandum of Law with CRAB. The statutory interpretation claims remain pending before CRAB.

12. On December 1, 2025, following DALA's direction, Plaintiff filed a Complaint for Judicial Review and Declaratory and Injunctive Relief in Middlesex Superior Court, Civil Action No. 2581CV02968. That action asserted both state and federal constitutional claims.

13. Plaintiff now voluntarily dismisses the Superior Court action without prejudice pursuant to Mass. R. Civ. P. 41(a)(1)(i) and brings his federal constitutional claims in this Court. Plaintiff does not seek to bypass CRAB on matters within its statutory authority. DALA and CRAB lack jurisdiction to adjudicate constitutional claims. This Court is the proper and only forum for the constitutional relief Plaintiff seeks.

## STATEMENT OF FACTS

### *A. Plaintiff's Military Enlistment and Constructive Discharge*

14. In 2006, Plaintiff sought to serve his country in the United States Navy. He aspired to federal law enforcement, specifically the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA"), and understood that military service was the credential pathway to those careers.

15. Plaintiff reported to the Military Entrance Processing Station ("MEPS") at 495 Summer Street, South Boston, Massachusetts. He took the Armed Services Vocational Aptitude

Battery ("ASVAB") examination and scored approximately 88. He was offered a position in the Navy's Advanced Electronics Computer Field ("AECF") as an E-4 with a six-year commitment and signing bonus. Due to his high ASVAB score and undergraduate degree from Northeastern University (conferred March 2005), Plaintiff was encouraged to take the Officer Candidate School ("OCS") examination.

16. Plaintiff entered the DEP and took the military oath of enlistment at MEPS, swearing to "support and defend the Constitution of the United States against all enemies, foreign and domestic." He was sworn in at least twice during the DEP process. Plaintiff possessed AECF assignment paperwork documenting his rate designation, commitment terms, and bonus structure.

17. Plaintiff told his recruiter, Petty Officer First Class Aziz, that he aspired to Naval Special Warfare ("NSW") selection, specifically the Navy SEALs. PO1 Aziz acknowledged the interest and directed Plaintiff to pursue Basic Underwater Demolition/SEAL ("BUD/S") testing after arriving at basic training. Prior to and during the DEP, Plaintiff engaged in daily physical training in preparation for BUD/S, including hours of sidestroke laps, distance running, push-ups, pull-ups, dips, and weight training, increasing intensity and volume week by week.

18. Plaintiff is gay. At no point during his enlistment process did Plaintiff disclose his sexual orientation to any military personnel, because federal law made such disclosure grounds for separation, criminal prosecution, and dishonorable discharge.

19. When the Boston Police Department ("BPD") offered Plaintiff a position in November 2006, Plaintiff withdrew from the DEP. His preference for BPD over the Navy was a product of discrimination: without the Don't Ask, Don't Tell policy ("DADT"), 10 U.S.C. s.

654 (repealed 2010), and without Article 125 of the Uniform Code of Military Justice ("UCMJ"), military service and the path to federal law enforcement would have been his first choice. His withdrawal constitutes constructive discharge under *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004), because the government's discriminatory policies created conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to leave. Plaintiff began at BPD on November 27, 2006.

*B. The Discriminatory Legal Framework*

20. At the time of Plaintiff's enlistment, federal law criminalized homosexual conduct under UCMJ Article 125. DADT required service members to conceal their sexual orientation on pain of discharge. Between 1994 and 2011, over 13,000 service members were discharged solely because of their sexual orientation.

21. Massachusetts law similarly criminalized homosexual conduct. Chapter 272's sodomy and "unnatural acts" statutes, dating to 1641 and carrying penalties of up to twenty years' imprisonment, remained on the books throughout Plaintiff's career. Massachusetts remains the only state in New England that has not formally repealed these statutes, though they are unenforceable under Lawrence v. Texas, 539 U.S. 558 (2003).

*C. Official Repudiation of the Discriminatory Policies*

22. The discrimination that excluded Plaintiff from military service has been officially condemned at every level of government, including: the Supreme Court's holding in *Lawrence v. Texas*, 539 U.S. 558, 578 (2003), that laws criminalizing consensual same-sex conduct violate the Due Process Clause; Congress's repeal of DADT in 2010 (Pub. L. 111-321), effective September 20, 2011; President Biden's Proclamation No. 10780 (June

26, 2024), granting pardons for certain violations of UCMJ Article 125 and acknowledging that "thousands of LGBTQI+ service members were forced out of the military because of their sexual orientation or gender identity" and that "the impact of that historical injustice remains"; and the Massachusetts Senate's unanimous votes to repeal Chapter 272's sodomy and "unnatural acts" statutes in January 2024 (S.2551, 39-0) and July 2025 (S.1034, 40-0).

### *D. Plaintiff's Nineteen Years of Public Service*

23. Plaintiff has served the City of Boston as a police officer for nineteen years, assigned to District D-14 (Brighton/Allston). He holds active POST certifications in both Massachusetts and California. In January 2023, he received a departmental commendation for professionalism.

### *E. The HERO Act Application and Denial*

24. In 2024, Massachusetts enacted the HERO Act (2024 Mass. Acts ch. 178), amending G.L. c. 32, s. 4(1)(h), to provide veterans a limited opportunity to purchase up to four years of creditable service based on military service.
25. In August 2025, Plaintiff applied to BRS for creditable service under the HERO Act. On September 5, 2025, Executive Officer Smyth denied the application, acknowledging "the unfairness of your situation" but concluding that Plaintiff was "not eligible to make this service purchase" because he was never issued a DD-214.

### *F. The Harm to Plaintiff*

26. The denial costs Plaintiff approximately $10,000 annually in reduced pension benefits over his expected lifetime, a minimum of $300,000 in economic damages based on conservative actuarial estimates.

27. Without the creditable service, Plaintiff has nineteen years of creditable service rather than twenty-three. He is one year away from the twenty-year threshold for full pension benefits, making the denial immediately consequential to his retirement eligibility, pension calculation, and economic security.

### *G. The Veteran Preference Cascade*

28. The HERO Act denial is not an isolated injury. Massachusetts maintains veteran preferences in civil service examinations (G.L. c. 31, s. 26), creditable service purchases (G.L. c. 32, s. 4(1)(h)), and other advantages conferred on individuals classified as "veterans" under G.L. c. 4, s. 7, cl. 43.

29. The class of "veterans" eligible for these preferences was artificially constructed through decades of federal policy that categorically excluded LGBTQ+ individuals from military service. As a direct result, Plaintiff has been denied veteran preferences throughout his career, including: denial of veteran preference points in BPD promotional examinations; denial of transfer eligibility based on veteran status following a perfect score on the Boston Fire Department examination in 2021; and denial of HERO Act creditable service purchase in September 2025.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of the Equal Protection Clause: HERO Act Denial**

(Fourteenth Amendment, 42 U.S.C. s. 1983)

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. Defendant BRS is a municipal entity subject to suit under s. 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The denial of Plaintiff's HERO Act application was made pursuant to BRS's official policy of categorically denying applications from individuals who lack DD-214 documentation, without exception for those excluded from service by unconstitutional federal discrimination. This policy was applied by Executive Officer Timothy J. Smyth, acting as the final policymaker for BRS on HERO Act eligibility determinations.

32. BRS denied Plaintiff a government benefit (creditable service purchase under the HERO Act) based on his non-veteran status. Plaintiff's non-veteran status is the direct result of unconstitutional sex-based discrimination under DADT and UCMJ Article 125. Applying the HERO Act to deny benefits to Plaintiff while granting benefits to veterans perpetuates that discrimination.

33. Under *Bostock v. Clayton County*, 590 U.S. 644, 651-52 (2020), sexual orientation discrimination is inherently sex-based. Under *United States v. Virginia*, 518 U.S. 515, 532-33 (1996), sex-based classifications are subject to intermediate scrutiny. Under *Romer v. Evans*, 517 U.S. 620, 632-36 (1996), using discriminatory policies as a basis for current benefits denial reflects impermissible animus. Defendant's denial is not substantially related to any important governmental interest.

34. BRS's own acknowledgment of "the unfairness of [Plaintiff's] situation" demonstrates that its denial serves no legitimate governmental purpose.

35. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer economic harm of not less than $300,000 over his expected lifetime and

dignitary injury from the perpetuation of discrimination the Commonwealth has formally condemned.

## COUNT II

**Violation of the Due Process Clause: HERO Act Denial**

(Fourteenth Amendment, 42 U.S.C. s. 1983)

36. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

37. The substantive due process protections established in *Griswold v. Connecticut*, 381 U.S. 479 (1965), and extended in *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Obergefell v. Hodges*, 576 U.S. 644 (2015), protect Plaintiff's intimate personal autonomy from governmental interference.

38. UCMJ Article 125 criminalized the same conduct Lawrence declared constitutionally protected. Plaintiff was excluded from military service under an unconstitutional law. BRS now converts that unconstitutional exclusion into permanent economic harm, extending the due process violation rather than remedying it.

39. Plaintiff's non-service was coerced by threat of criminal prosecution under policies that have since been officially repudiated at every level of government. The Constitution does not permit the government to use a coerced "choice" as a neutral basis for permanent economic harm.

## COUNT III

**Violation of the Equal Protection Clause: Veteran Preference Cascade**

(Fourteenth Amendment, 42 U.S.C. s. 1983)

40. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

41. Massachusetts maintains a comprehensive system of veteran preferences in public employment, including civil service examination preferences under G.L. c. 31, s. 26; creditable service purchase under G.L. c. 32, s. 4(1)(h) as amended by the HERO Act; and other statutory and regulatory advantages conferred on individuals classified as "veterans" under G.L. c. 4, s. 7, cl. 43.

42. The class of "veterans" eligible for these preferences was artificially and unconstitutionally constructed through decades of federal policy that categorically excluded LGBTQ+ individuals from military service. The exclusion was intentional, categorical, and sex-based within the meaning of Bostock.

43. Plaintiff was personally excluded from the class of "veterans" by this unconstitutional sex-based discrimination. As a direct and proximate result, Plaintiff has been denied veteran preferences throughout his nineteen-year career, including denial of promotional preference points, denial of transfer eligibility following a perfect score on the Boston Fire Department examination in 2021, and denial of HERO Act creditable service purchase.

44. The application of veteran preference statutes to a class of "veterans" artificially constructed through unconstitutional discrimination, without remedy for those excluded, violates the Equal Protection Clause. This case is distinguishable from *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979), because Plaintiff was not merely underrepresented in the military; he was categorically and unconstitutionally prohibited from serving.

45. This cascading exclusion affects an entire class of LGBTQ+ individuals who were unconstitutionally barred from military service and consequently denied the full spectrum of veteran preferences in public employment, education, housing, and benefits. The harm is

ongoing and compounds with each application of veteran preference from which Plaintiff is excluded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's denial of Plaintiff's application to purchase creditable service under the HERO Act and G.L. c. 32, s. 4(1)(h), based on his exclusion from military service due to his sexual orientation, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution;

B. Declare that the application of Massachusetts veteran preference statutes to a class of "veterans" artificially constructed through unconstitutional sex-based discrimination, without remedy for those excluded by that discrimination, violates the Equal Protection Clause of the Fourteenth Amendment;

C. Order Defendant to permit Plaintiff to purchase creditable service for retirement purposes on equal terms with similarly situated employees whose ability to serve in the military was not obstructed by unconstitutional discrimination;

D. Enjoin Defendant from applying the HERO Act and G.L. c. 32 in a manner that perpetuates discrimination based on sexual orientation;

E. Award Plaintiff compensatory damages for the economic harm caused by Defendant's unconstitutional denial of creditable service;

F. Award Plaintiff nominal damages for the violation of his constitutional rights;

G. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. s. 1988;

H. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Rory M. Coleman, Pro Se
PO Box 590236
Newton Centre, MA 02459
Tel: +1 (857) 351-9403
Email: coleman2537@gmail.com

Dated: 02/17/2026

## VERIFICATION

I, Rory Michael Coleman, under the pains and penalties of perjury, verify that the statements in this Complaint are true to the best of my knowledge, information, and belief.

Rory M. Coleman

Dated: 02/17/2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2026, I caused a true and correct copy of the foregoing Complaint to be served upon:

Boston Retirement System
Boston City Hall, Room 816
Boston, MA 02201

Timothy J. Smyth, Esquire
Executive Officer
timothy.smyth@boston.gov

Office of the Legal Advisor
Boston City Hall, Room 615
Boston, MA 02201

Rory M. Coleman