UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RORY M. COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON RETIREMENT SYSTEM,<br><br>Defendant. | Civil No. 26-10894-LTS |

MEMORANDUM AND ORDER ON MOTION TO DISMISS (DOC. NO. 13)

October 13, 2026

SOROKIN, J.

Rory M. Coleman, who is self-represented in this matter, sued the Boston Retirement System ("BRS") after the agency denied his application for certain retirement benefits. BRS moved to dismiss, and Coleman opposed. The Court has carefully considered the parties' briefing and concluded that oral argument is unnecessary to resolve the issues presented. For the reasons explained below, BRS's Motion to Dismiss is ALLOWED.

## I. BACKGROUND[1]

The Court draws the following factual allegations from Coleman's complaint, Doc. No. 1, and accepts those allegations as true for the purpose of resolving the Motion to Dismiss. See Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Coleman is gay. Doc. No. 1 at 5. In 2006, he joined the Navy's Delayed Entry Program ("the DEP"). Id. at 3–5. Later that year, he withdrew from the DEP to work as a police officer for the Boston Police Department.

[1] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header.

Id. at 5. Coleman alleges that he withdrew from the DEP because the federal government discriminated against gay people at the time through the "Don't Ask, Don't Tell" policy and Article 125 of the Uniform Code of Military Justice ("UCMJ"), which criminalized homosexual conduct. Id. at 5–6. Since then, Coleman has worked as a police officer in Boston. Id. at 7.

In 2024, Massachusetts enacted the Honoring, Empowering, and Recognizing Our Servicemembers and Veterans Act ("HERO Act"), 2024 Mass. Acts ch. 178. Id. Among other provisions, the HERO Act allows veterans who qualify for Massachusetts public-employee retirement systems to purchase up to four years of creditable service toward their retirement based on prior military service. See Mass. Gen. Laws ch. 32, § 4(1)(h); Doc. No. 1 at 7. The HERO Act defines "veteran" as any person who served at least 180 days of active duty whose last discharge or release was under honorable conditions, any person who served at least 90 days of active duty which included at least one day of wartime service, or any person who has been awarded certain campaign badges. Mass. Gen. Laws ch. 32, § 1; Mass. Gen. Laws ch. 4, § 7(43).

In August 2025, Coleman submitted an application for creditable service under the HERO Act to BRS, the entity which administers retirement benefits for City of Boston employees. Doc. No. 1 at 2, 7. In that application, Coleman "identified himself as LGBTQ and explained that he was unable to serve in the military despite his willingness and desire to do so, due to laws that prohibited his service based on sexual orientation." Id. at 2–3. Upon receiving Coleman's application, BRS "requested a DD-214 discharge form," which is a form given to veterans upon discharge from active military duty. Id. at 3. In response, Coleman explained that he "was denied military service under the [UCMJ] due to policies that criminalized [his] identity." Id. Coleman elaborated that he was "seeking equitable access to the buyback opportunity that [his] similarly situated heterosexual peers were afforded." Id.

On September 5, 2025, BRS denied Coleman's application for creditable service because he had not served in the military and therefore did not qualify as a veteran under the HERO Act. Id. The letter denying Coleman's application added: "[BRS] recognizes the unfairness of your situation. Unfortunately, we are bound by Massachusetts General Law and cannot grant you the relief you seek. We would urge you to consider appealing this decision or perhaps seeking legislative redress." Id. As instructed, Coleman appealed to the Division of Administrative Law Appeals, raising both constitutional and statutory claims. Id. at 3–4. The Division dismissed Coleman's appeal on October 10, 2025. Id. at 3. In doing so, the Division explained that his constitutional claims could not "be entertained by an administrative tribunal." Id.

On November 30, 2025, Coleman filed an objection raising his dismissed statutory claims with the Contributory Retirement Appeal Board ("CRAB"). Id. at 4. And on February 17, 2026, Coleman filed the lawsuit now pending in this Court, alleging several constitutional claims against BRS. In laying out the relevant "discriminatory legal framework" for these claims, Coleman's complaint noted that Massachusetts, like the federal government, had "criminalized homosexual conduct" pursuant to "sodomy and unnatural acts statutes" which dated to as early as 1641. Id. at 6. And, Coleman added, "Massachusetts remains the only state in New England that has not formally repealed these statutes, though they are unenforceable under Lawrence v. Texas, 539 U.S. 558 (2003)." Doc. No. 1 at 6. Similarly, Coleman's memorandum of law in support of his complaint highlighted that "Massachusetts has not banned the gay and trans panic defense." Doc. No. 2 at 8.

Coleman's complaint brought several claims under 42 U.S.C. § 1983. See Doc. No. 1 at 8–12. Count I asserted that BRS's denial of his HERO Act application violated the Equal Protection Clause of the Fourteen Amendment. Id. at 8–10. Coleman noted that BRS had

denied his application “based on his non-veteran status.” Id. at 9. But, Coleman argued, his “non-veteran status [was] the direct result of unconstitutional sex-based discrimination” by the federal government through its prior “Don’t Ask, Don’t Tell” policy and Article 125 of the UCMJ. Id. Coleman therefore concluded that BRS had “perpetuate[d] that discrimination” by “[a]pplying the HERO Act to deny benefits to [him] while granting benefits to veterans.” Id. Coleman also added that “BRS’s own acknowledgement of ‘the unfairness of [Plaintiff’s] situation’ demonstrate[d] that its denial serve[d] no legitimate governmental purpose.” Id.

Count II contended that BRS’s denial of Coleman’s HERO Act application violated the Due Process Clause of the Fourteenth Amendment. Id. at 10. Specifically, Coleman “was excluded from military service” because of UCMJ Article 125, which “criminalized the same conduct” that the Supreme Court has concluded qualifies for “substantive due process protections.” Id. As a result, Coleman argued that, by denying his application, BRS had “convert[ed] that unconstitutional exclusion into permanent economic harm.” Id.

Count III alleged a violation of the Fourteenth Amendment’s Equal Protection Clause for what Coleman termed the “Veteran Preference Cascade.” Id. at 10–11. Coleman elaborated that “Massachusetts maintains a comprehensive system of veteran preferences in public employment,” education, housing, and benefits, including “civil service examination preferences,” “promotional preference points” in the Boston Police Department, HERO Act creditable-service purchases, and transfer eligibility for the Boston Fire Department. Id. at 11. But Coleman argued that “[t]he class of ‘veterans’ eligible for these preferences was artificially and unconstitutionally constructed through decades of federal policy that categorically excluded LGBTQ individuals from military service.” Id. As a result, Coleman concluded that Massachusetts’s “application of veteran preference statutes to a class of ‘veterans’ artificially

constructed through unconstitutional discrimination, without remedy for those excluded, violates the Equal Protection Clause." Id. In connection with these claims, Coleman's complaint sought numerous forms of relief, including declaratory relief, injunctive relief, compensatory damages, nominal damages, and attorneys' fees. Id. at 11–12.

BRS has moved to dismiss all of Coleman's claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 13. Under Rule 12(b)(1), BRS argues that Count III must be dismissed because Coleman's alleged injuries stemming from the Massachusetts "Veteran Preference Cascade" are not fairly traceable to BRS. Id. at 1. BRS also argues that Coleman's claims are not ripe in federal court because his statutory claims remain pending before CRAB. Doc. No. 14 at 6. In the alternative, BRS contends that the Court should stay this action pending resolution of Coleman's CRAB proceedings. Id. Finally, under Rule 12(b)(6), BRS contends that the complaint must be dismissed in its entirety because Coleman has not stated a claim upon which relief may be granted. See id. at 6–12. Coleman has opposed BRS's motion. Doc. No. 15.

## II. LEGAL STANDARD

Rule 12(b)(6) requires the Court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conversely, "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation modified). Though this Court "must be mindful of the challenges faced by pro se litigants and construe their arguments liberally," it need not "conjure

up unpled allegations." Vieira v. De Souza, 22 F.4th 304, 311 (1st Cir. 2022) (citation modified).

Similarly, Rule 12(b)(1) requires dismissal if the Court "lack[s] . . . subject-matter jurisdiction." The standard of review is substantively identical to a motion to dismiss under Rule 12(b)(6). See Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 326–27 (1st Cir. 2016). If a plaintiff "lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case." Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996). To have standing to bring a suit, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citation modified).

## III. DISCUSSION

The Court first assesses whether Coleman states a claim upon which relief can be granted under Rule 12(b)(6). He does not. Then, the Court briefly explains why Coleman also lacks standing under Rule 12(b)(1). Both shortcomings require dismissal.

### A. Failure to State a Claim

In short, Coleman's complaint does not "state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The Court begins with the Equal Protection claims in Counts I and III before turning to the Due Process claim in Count II.

#### 1. *Equal Protection*

The Fourteenth Amendment's Equal Protection Clause bars a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. But this "does not take from the States all power of classification." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 271 (1979). "Indeed, most laws classify, and many affect certain groups

unevenly, even though the law itself treats them no differently from all other members of the class described by the law." Id. at 271–72. If "the basic classification is rationally based," however, "uneven effects upon particular groups within a class are ordinarily of no constitutional concern." Id. at 272. Instead, "[p]roof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

To be sure, certain protected classifications "in themselves supply a reason to infer antipathy" and therefore require a heightened state justification. Feeney, 442 U.S. at 272. For instance, classifications based upon gender or sex require the state to show that "the challenged classification serves important government objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." United States v. Virginia, 518 U.S. 515, 533 (1996) (citation modified).

Conversely, a state's classification based on veteran status alone does not require a heightened government justification. See Feeney, 442 U.S. at 274–76. Indeed, such a classification is "neutral on its face," even if a "panoply" of "assertedly discriminatory federal laws" may have "prevented all but a handful" of members in certain groups, such as women or gay people, "from becoming veterans" in the past. Id. As a result, a state's veteran classification needs only have a rational basis unless the plaintiff can otherwise demonstrate that it was motivated by "discriminatory intent." See id. at 276.

Here, to the extent Coleman contends that the classification by veteran status in the HERO Act itself violates the Equal Protection Clause, that claim fails. Section 4(1)(h) of the HERO Act only classifies based on whether an applicant completed qualifying veteran service. See Mass. Gen. Laws ch. 32, § 4(1)(h). The provision makes no reference to gender, sex, sexual

orientation, or any other arguably protected class. Because the provision is "neutral on its face," Coleman must show that its enactment was motivated by "discriminatory intent." Feeney, 442 U.S. at 274. This Coleman cannot do. He has not provided any evidence to plausibly indicate that the Massachusetts State Legislature intended to discriminate on the basis of sexual orientation when it passed the HERO Act in 2024. Though Massachusetts has not yet repealed laws enacted in 1641 and 1879 which criminalized homosexual conduct, Doc. No. 15 at 8, Coleman concedes that intervening Supreme Court precedent has barred their enforcement since 2003, Doc. No. 1 at 6 (citing Lawrence v. Texas, 539 U.S. 558 (2003)). Failure to repeal laws that are unenforceable now does not generally suggest that Massachusetts acted with discriminatory intent in passing other laws, and certainly not in passing the HERO Act in particular. If anything, the fact that the Massachusetts Senate unanimously voted to repeal these acts in 2024 suggests the opposite—that it is unlikely the Senate intended to discriminate by sexual orientation when it passed the HERO Act that same year. See Doc. No. 1 at 7.

Coleman also cites the fact that "Massachusetts has not banned the use of the LGBTQ 'panic' defense in its courts" as evidence of discriminatory intent. Doc. No. 15 at 7–8. But whatever the merits of legislation banning this defense in criminal proceedings, Massachusetts's failure to enact that legislation has no bearing on its intent with respect to defining eligibility for service-credit purchases under the HERO Act. Coleman's remaining evidence exclusively concerns the federal government—not Massachusetts—and is irrelevant to the state's intent.

Absent a showing of discriminatory intent, the veteran classification in section 4(1)(h) need only have a rational basis. Coleman's complaint does not explain why providing retirement benefits to qualifying veterans lacks a rational basis. Nor can the Court perceive any plausible reason why that would be so, especially in light of the Supreme Court's conclusion that a similar

Massachusetts preference for veterans had a rational basis. See Feeney, 442 U.S. at 277–78. This being the case, Coleman fails to plausibly allege that the veteran classification in section 4(1)(h) of the HERO Act violates the Equal Protection Clause.

Coleman also has not demonstrated that BRS's denial of his application violated the Equal Protection Clause. Section 4(1)(h) of the HERO Act offers qualifying veterans the opportunity to purchase service credit. Mass. Gen. Laws ch. 32, § 4(1)(h). Coleman concedes that he is not a qualifying veteran. See Doc. No. 15 at 7. BRS's straightforward application of the HERO Act—denying veteran service credit to someone who is not a veteran—is therefore "neutral on its face." Feeney, 442 U.S. at 274.

As a result, Coleman must demonstrate that BRS's facially neutral denial was nonetheless motivated by "discriminatory intent." Id. Coleman again fails to allege any facts which make this remotely plausible. He does not allege that BRS has selectively applied the HERO Act or otherwise treated similarly situated individuals differently. To the extent Coleman argues that the failure of the Massachusetts State Legislature to pass or repeal certain criminal laws demonstrates BRS's discriminatory intent in denying his application, Doc. No. 15 at 7–8, this falls well short. As discussed above, this evidence has little relationship to the Massachusetts State Legislature's intent in passing the HERO Act. Its relationship to BRS—an agency which administers retirement benefits and has no connection to the criminal laws Coleman cites—is still more attenuated. So, too, with respect to the federal government's prior discriminatory policies towards gay servicemembers. Simply put, these policies have zero bearing on BRS's intent in denying Coleman's application.

Without evidence of discriminatory intent, BRS's denial only needs to have a rational basis. Feeney, 442 U.S. at 274. Denying Coleman's application for benefits because he did not

meet the statutory criteria for those benefits indisputably clears this bar. Coleman nonetheless asserts that "BRS's own denial letter acknowledg[ing] the unfairness of his situation" inherently demonstrates that BRS lacked a rational basis for its denial. Doc. No. 15 at 9 (citation modified). But the mere fact that BRS expressed sympathy for the unfairness of Coleman's situation in no way undermined the agency's rational basis for denying his application as the HERO Act required. As a result, Coleman also fails to state a claim that BRS's denial of his application violates the Equal Protection Clause.

The Court therefore ALLOWS BRS's Motion to Dismiss as to Counts I and III. One claim remains.

2. *Due Process*

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause has both procedural and substantive components. The former ensures that government, when dealing with private persons, will use fair procedures. The latter safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." Harron v. Town of Franklin, 660 F.3d 531, 535–36 (1st Cir. 2011) (citation modified).

The Court "examines procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. at 537 (citation modified). "To have a property interest in a [government] benefit, a person . . . must have more than an abstract need or desire for it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). Rather, a person must "have a legitimate claim of entitlement to it." Id. To the extent that Coleman's complaint can be understood to raise a

procedural due process claim, this claim fails at step one. Coleman has no legitimate claim to creditable service under the HERO Act because—as he concedes—he does not qualify as a veteran under that act.

Coleman's complaint also does not raise a cognizable substantive due process claim. To be sure, Coleman is correct that substantive due process protects "intimate personal autonomy from governmental interference" in a number of respects, Doc. No. 1 at 10, including the use of contraceptives, Griswold v. Connecticut, 381 U.S. 479 (1965), private sexual conduct, Lawrence v. Texas, 539 U.S. 558 (2003), and same-sex marriage, Obergefell v. Hodges, 576 U.S. 644 (2015). The problem is that BRS's denial of Coleman's HERO Act application has nothing to do with these protections. BRS denied Coleman retirement benefits because he was not a veteran and therefore did not meet the statutory criteria for the benefits he sought. BRS did not interfere with Coleman's intimate personal autonomy in any sense, let alone in a manner that implicates substantive due process.

The Court therefore ALLOWS BRS's Motion to Dismiss as to Count II. Though the foregoing analysis under Rule 12(b)(6) is straightforward and clearly compels dismissal, the Court turns briefly to one more set of issues implicated by Coleman's claims.

### B. Standing

It appears from the record that lack of standing also compels dismissal under Rule 12(b)(1). For instance, Count III of Coleman's complaint alleges that "the comprehensive system of veteran preferences in Massachusetts public employment" violates the Equal Protection Clause. Doc. No. 1 at 10–11. Insofar as this count challenges not just section 4(1)(h) of the HERO Act, but also state civil service exams, Boston Police Department promotion policies, and Boston Fire Department transfer procedures, BRS is not the proper defendant because it neither is responsible for—nor has the ability to redress—these claims. For that

matter, Coleman also has not demonstrated that any of his injuries—under any count—are "fairly traceable" to BRS. Spokeo, 578 U.S. at 338. Instead, the discrimination of which Coleman complains was perpetuated by the federal government, not by BRS or even the state of Massachusetts more broadly. See Doc. No. 1 at 4–6. This, too, is a fatal defect in Coleman's claims against BRS.

## IV. CONCLUSION

For the foregoing reasons, BRS's Motion to Dismiss (Doc. No. 13) is ALLOWED.[2] The Clerk shall enter a judgment of dismissal with each side to bear its own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

[2] Because Coleman's complaint is dismissed in its entirety, the Court does not address BRS's argument that Coleman's claims are not ripe or, in the alternative, that a stay is necessary, in light of his ongoing CRAB proceedings. Doc. No. 14 at 6. The Court notes that Massachusetts law provides for judicial review in the appropriate superior court of "a final decision of any agency in an adjudicatory proceeding." Mass. Gen. Laws ch. 30A, § 14. As part of that review, Massachusetts courts can consider constitutional challenges. See, e.g., Fine v. Contributory Ret. App. Bd., 518 N.E.2d 1151, 1152–53 (Mass. 1988) (assessing state and federal Equal Protection Clause challenge to CRAB's retirement classification).